## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CRISTA S. FOREST,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.:  1:23-cv-02925

Judge John Robert Blakey

Magistrate Judge Jeffrey I. Cummings

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND
<u>SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION</u>**

Plaintiff, CRISTA S. FOREST ("Forest" or "Plaintiff"), submits this Memorandum in of

support Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary

injunction, a temporary asset restraint, expedited discovery, and service of process by email and/or

electronic publication (the "*Ex Parte* Motion").

## **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II.  STATEMENT OF FACTS..........................................................................................4

    A.  PLAINTIFF'S COPYRIGHTS AND PRODUCTS .............................................................4

    B.  DEFENDANTS' UNLAWFUL ACTIVITIES ...................................................................4

        i.   *Defendants Operate Legitimate-Looking Internet Stores* ................................5

        ii.  *Defendants Use Fictitious Aliases and Common Tactics to Evade Take Down* .............6

III. ARGUMENT ...........................................................................................................8

    A.  THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS..........................9

    B.  STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ...........10

    C.  PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS ...............................................11

    D.  THERE IS NO ADEQUATE REMEDY AT LAW AND PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF ...............................................12

    E.  THE BALANCING OF HARMS TIPS IN PLAINTIFF'S FAVOR ........................................13

    F.  ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST .....................................14

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE..............................................14

    A.  A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF PLAINTIFF'S WORKS IS APPROPRIATE .................15

    B.  PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE .............................15

    C.  PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY .............................................17

    D.  SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION IS WARRANTED IN THIS CASE ...............................................................................................................18

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ...............................................23

VI.  CONCLUSION ........................................................................................................23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992) ................................................ 13

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) .................. 19, 20

*Apple Computer, Inc. v. Franklin Computer Corp*., 714 F.2d 1240, 1255 (3rd Cir. 1983)............... 16

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ........................................... 16

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1

   (N.D. Ill. May 15, 2001) ............................................................................................................. 12

*Christian Dior Couture, S.A. v. Liu,* 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ....... 11

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ........................... 9

*CSC Holdings, Inc. v. Redisi,* 309 F.3d 988 (7th Cir. 2002)............................................................... 20

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) ............................................................. 19

*Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461, 462, 469 (7th Cir. 2000).................... 13

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ................................................................... 21

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ............................ 19

*Hangzhou Chic Intelligent Technology Co.; . et al, v. The Partnerships and Unincorporated*

   *Associations Identified on Schedule A*, 20-cv-04806 (N.D. Ill. April 1, 2021) ............................. 26

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). 14

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999)............................ 28

*In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) ................................. 27

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009)........................................... 27

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988)......... 14

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C.

   Jan. 30, 2008)............................................................................................................................. 25

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ............................ 15

*Laura Graves B.V. v. The Partnerships and Unincorporated Associations Identified on Schedule
   "A"*, No. 23-cv-0488 (N.D. Ill. Jan. 31, 2023) ..................................................... 2, 18, 20

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ................. 19, 20

*Lorillard v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) ....... 19

*Lucia Heffernan v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*,
   No. 23-cv-02145 (N.D. Ill. Apr. 11, 2023) ......................................................... 3, 18, 20

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2
   (N.D. Ill. Dec. 1, 2008) ................................................................................. 25

*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ....................... 14

*Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018) ..................................... 26

*Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015) 12

*Mori Lee v. Lei Liu et al.,* No. 19-cv-07555 at [60] (N.D. Ill. May 14, 2020) ............................ 11, 12

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26,
   2007) ...................................................................................................... 27

*NBA Properties, Inc. v. HANWJH, No. 21-2909, 2022 WL 3367823*, at *7 (7th Cir. Aug. 16, 2022) 11

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978) ............................... 21

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) .. 25, 28

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ................... 10

*Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989) ............................................. 28

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ....................... 19, 20

*Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002) ....................... 24, 25, 26

*Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) ........................................... 16

*Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016) ........................................................ 26

*Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) ............................................................ 11

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) .......................................... 12, 15

*uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010) ............................................ 10

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ............... 21

*Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) .......... 15, 16

<u>Statutes</u>

17 U.S.C. § 504(b) .................................................................................................................. 3, 15

28 U.S.C. § 1331 ......................................................................................................................... 9

28 U.S.C. § 1391 ......................................................................................................................... 9

28 U.S.C. §§ 1338(a)-(b) ............................................................................................................ 9

Fed. R. Civ. P. 4 ............................................................................................................. 18, 20, 21

Fed. R. Civ. P. 26(b)(2) .............................................................................................................. 17

Fed. R. Civ. P. 65 .................................................................................................................. *passim*

Federal Copyright Act, 17 U.S.C. § 101, et seq. ..................................................................... 9, 11

The Hague Convention, Article 1 ........................................................................................... 21, 22

<u>**MEMORANDUM OF LAW**</u>

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants") for Copyright Infringement (Count I). As alleged in the Complaint, Defendants are selling unauthorized products that are direct copies or derivative works of the copyrighted subject matter of Plaintiff's registered Copyrighted Works, hereinafter referred to as the "Crista S. Forest Products." Also, Defendants are promoting, advertising, marketing, distributing, and offering for sale, infringing Crista S. Forest Products, through various fully interactive commercial internet websites identified in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). Defendants' unauthorized conduct is done with the intent to generate profits by infringing and trading off the Plaintiff's valuable rights.

The Defendants create numerous Defendant Internet Stores and design them to appear to be selling authorized products, while actually selling unauthorized and unlicensed Crista S. Forest Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale establishing a logical relationship between them and suggesting that Defendants' piracy operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their piracy operation. Plaintiff has filed this action to combat Defendants' infringement of Plaintiff's registered copyrights, as well as to protect unknowing consumers from purchasing pirated Crista S. Forest Products over the internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to

1

sell pirated Crista S. Forest Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can and do purchase products being sold in connection with Plaintiff's Crista S. Forest Works. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Plaintiff's business within this judicial district, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive internet stores to sell and/or offer for sale unlicensed Crista S. Forest Products in connection with Plaintiff's copyrights.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order. Specifically, Plaintiff seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of pirated Crista S. Forest Products; and (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of infringing Crista S. Forest Products and Defendants' financial accounts; and (4) authorize service by electronic mail and/or electronic publication.

Indeed, considering the covert nature of offshore infringing activities and the vital need to establish an economic disincentive for infringement, courts regularly issue such orders. *See, e.g., Laura Graves B.V. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-0488 (N.D. Ill. Jan. 31, 2023); *Lucia Heffernan v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-02145 (N.D. Ill. Apr. 11,

2

2023); *see also, In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of several copyright registrations, and Defendants sold and offered to sell pirated products that infringed the Crista S. Forest copyrighted works.

In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent unknowing consumers from being deceived into purchasing pirated Crista S. Forest Products.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b). Finally, an order authorizing service of process by email and/or electronic publication is proper since as a result of Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.    STATEMENT OF FACTS

### A.  Plaintiff's Copyrights and Products

Plaintiff, Crista S. Forest, is the owner of the federal copyright registrations that protect the creative content of Plaintiff's artwork. Plaintiff, Crista S. Forest is in the business of developing, marketing, selling, and distributing the Crista S. Forest Products. Forest is a full-time self-taught wildlife artist that has loved to draw, color, and paint animals from an early age. *See* Declaration of Crista S. Forest (the "Forest Declaration") at ¶ 3. Long before Defendants' acts described herein, Plaintiff launched the Crista S. Forest Products. Crista S. Forest is the owner of Copyright Registration Nos. VA 2-336-158; VA 2-336-261; VA 2-336-262; VA 2-336-263; VA 2-336-264; VA 2-336-265; VA 2-336-223; VA 2-336-224; VA 2-336-225; VA 2-336-257; VA 2-336-258; VA 2-336-259; VA 2-336-286; VA 2-336-220; VA 2-336-161; VA 2-336-164; VA 2-336-167; VA 2-336-168; VA 2-336-176; VA 2-336-203; VA 2-336-221; VA 2-336-199; VA 2-336-190; VA 2-336-324; VA 2-336-192; VA 2-336-191; VA 2-336-377; VA 2-336-189; VA 2-336-198; VA 2-332-660; VA 2-336-222; VA 2-336-177; VA 2-336-180; VA 2-336-178; VA 2-336-187; VA 2-336-185; VA 2-336-215; and VA 2-336-716 (the "Crista S. Forest Works"). *Id.* at ¶ 5. True and correct copies of the federal copyright registration certificates for the Crista S. Forest Works are attached to the Forest Declaration as **Exhibit 1**. *Id.* Also, substantial time, money, and other resources have been expended in developing, advertising, and otherwise promoting the Crista S. Forest Works. *Id.* at ¶ 7. Thus, the Crista S. Forest Works are widely recognized and exclusively associated by consumers, the public, and the trade as being associated with Plaintiff. *Id.*

### B.  Defendants' Unlawful Activities

The success of the Crista S. Forest Works has resulted in significant infringement of the copyrights. *Id. at* ¶ 8. Numerous internet stores, including the Defendant Internet Stores, have been identified and linked to numerous marketplace listings, which were offering for sale, selling, and

importing unauthorized Crista S. Forest Products to consumers in this judicial district and throughout the United States. *Id.* Internet web storefronts like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and the value of pirated products will reach over $1.90 trillion in 2022. Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 3. Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments with the majority of seizures originating from Asia. *Id.* at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government exceeds $3.3 billion. *Id.* Internet websites like the Defendant Internet Stores are also estimated to contribute to millions of lost jobs for legitimate businesses. *Id.* at ¶ 3.

       i.       <u>Defendants Operate Legitimate-Looking Internet Stores</u>

Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Crista S. Forest Products. Forest Declaration at ¶ 10. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and/or PayPal. *Id.* Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such pirated products from authentic products. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Plaintiff has not licensed or authorized Defendants to use Plaintiff's Crista S. Forest Works, and none of the Defendants are authorized retailers of genuine Crista S. Forest Products. *Id* at ¶ 10.

ii.    <u>Defendants Use Fictitious Aliases and Common Tactics to Evade Take Down</u>

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *Id.* at ¶ 12. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their piracy operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* at ¶ 13. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective marketplace accounts. *Id.* In addition, pirated Crista S. Forest Products for sale in the Defendant Internet Stores bear similar indicia of being reproductions of one another, suggesting that the pirated Crista S. Forest Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images. *Id.*

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 14. *See also,* Vogt Declaration at ¶ 4. For example, infringers

like Defendants will often register new payment accounts or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id. See also* Forest Declaration at ¶ 14. Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *See* Vogt Declaration at ¶ 5. Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. Forest Declaration at ¶ 14.

Further, infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal or similar accounts behind layers of payment gateways so that they can continue operation. Forest Declaration at ¶ 15. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id. See also,* Vogt Declaration at ¶ 6. Indeed, analysis of transaction logs from similar cases brought by other copyright owners indicates that off-shore infringers regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this Court. Vogt Declaration at ¶ 8.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the pirated Crista S. Forest Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of infringers. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with unauthorized versions of the Crista S. Forest Works in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their pirating operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' pirating network, and the relationship

7

among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Crista S. Forest Works. To stop Defendants' sale of Infringing Crista S. Forest Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, to provide notice of these proceedings and the freeze of Defendants' assets by publishing the information on a designated website as well as sending emails to the email addresses Defendants used to register and maintain their sellers accounts with each platform they sell on. Without the relief requested by Plaintiff's instant Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with the Crista S. Forest Works via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the pirated Crista S. Forest Products for sale on Defendants' websites are owned, sponsored, or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Crista S. Forest Works and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based accounts, including PayPal or similar accounts. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## A. This Court May Exercise Personal Jurisdiction over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this judicial district as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products replicating Crista S. Forest Works without authorization. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell infringing Crista S. Forest Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 2, 15. Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as

true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using intellectual property without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the internet. 735 ILCS 5/2-209(a)(2). Recently the Seventh Circuit concluded that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers, such as Amazon.com. *NBA Properties, Inc. v. HANWJH, No. 21-2909, 2022 WL 3367823*, at *7 (7th Cir. Aug. 16, 2022) ("[Defendant's] actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address."); *See also, Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020); *Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) (Docket Entry 46); *Mori Lee v. Lei Liu et al.*, No. 19-cv-07555 at [60] (N.D. Ill. May 14, 2020); *Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015).

### B.  Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit have held that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g.*

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### C. Plaintiff Will Likely Succeed on the Merits

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since

101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Here, Plaintiff owns the registered copyrights for the Crista S. Forest Works. Forest Declaration at ¶ 5. The accused products use the protected works or are derived from the distinctive creative content found in the Crista S. Forest Works. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

### D. There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988).

The harms caused by the copyright infringement of the Crista S. Forest Works is equally insidious. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, it devalues the Crista S. Forest Works by associating them with inferior quality goods, and it undermines the value of the copyrights by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop further artwork and markets for the existing work. Forest Declaration at ¶¶ 16-21. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiff will suffer irreparable harm because

of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiff's ability to enforce its exclusive rights.*"*); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business). Accordingly, Plaintiff has established that Plaintiff will be irreparably harmed by Defendants' infringing conduct.

### E. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Crista S. Forest Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

**F. Issuance of the Injunction is in the Public Interest**

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the creative content of the Crista S. Forest Works extends far beyond protecting the works of the producing studio. It also protects the integrity of the Crista S. Forest Products and encourages creative expression.

Moreover, federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). This is equally true in the copyright context. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of copyrights used in connection with those goods. Unless Defendants' unauthorized use of the Crista S. Forest Works are enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

**IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Works is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the Crista S. Forest Works on or in connection with all Defendant Internet Stores and to cease their acts of copyright infringement. Such relief is necessary to stop the ongoing harm to the copyrights, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Crista S. Forest Works. The need for *ex parte* relief is magnified in today's global economy where infringers can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute pirated Crista S. Forest Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property. *See, e.g., Laura Graves B.V. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-0488 (N.D. Ill. Jan. 31, 2023); *Lucia Heffernan v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-02145 (N.D. Ill. Apr. 11, 2023).

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b). Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to

overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in an IP infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."). Also, this Court issued asset restraining orders for entire financial accounts in similar cases. *See, e.g., Laura Graves B.V. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",*

No. 23-cv-0488 (N.D. Ill. Jan. 31, 2023); *Lucia Heffernan v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-02145 (N.D. Ill. Apr. 11, 2023).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C. Plaintiff is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Amazon or PayPal, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include

only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the same third parties, in previous lawsuits, have worked with copyright owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### D. Service of Process by E-mail and/or Electronic Publication is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an e-mail to the e-mail addresses identified in **Exhibit 2** to the Forest Declaration and any e-mail addresses provided for Defendants by third parties that includes a link to said website. Plaintiff submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from online marketplaces and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical address information in their registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Internet Stores may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

Past investigation and discovery of online marketplace accounts reveals that Defendants appear to have provided false physical address information to the online marketplaces in order to avoid full liability. Vogt Declaration at ¶ 9. For example, many of Defendants' names and physical addresses used to register the Defendant accounts are incomplete, contain randomly typed letters, fail to include cities or states, or use privacy services that conceal this information. *Id.* Identical contact information among multiple seller accounts also suggests that many of the aliases used to register the Defendant Internet Stores are used by the same individual or entity. *Id.*

Despite providing false physical addresses, the registrants of the Defendant online selling account must generally provide an accurate e-mail address so that their service providers may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, online marketplace account operators accepting PayPal, or similar accounts, must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of Defendant Internet Stores, who operate

entirely online, to visit the Defendant Internet Stores to ensure they are functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see also, MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

Plaintiff submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly

20

given the decision by the registrants of the Defendant Internet Stores to conduct their internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the defendants via electronic publication or e-mail. *See Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018); *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016); *See also Hangzhou Chic Intelligent Technology Co. et al, v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 20-cv-04806 (N.D. Ill. April 1, 2021) (finding Hague Convention service is optional under Federal Rule of Civil Procedure 4.).

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the registrants of the Defendant Internet Stores due to their provision of false and incomplete street addresses. Plaintiff, however, has good cause to suspect the registrants of the respective Defendant Internet Stores are all residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). Vogt Declaration at ¶ 10. The Hague Convention does not preclude service by email, and the declarations to the

Hague Convention filed by China do not appear to expressly prohibit email service. *Id.* Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id*. at ¶ 11. As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Vogt Declaration at ¶¶ 10-12. The proposed Temporary Restraining Order provides for the issuance of single original summons[1] in the name of "uaerscnug and all other Defendants identified in the Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). As such, Plaintiff respectfully requests this Court's permission to serve Defendants via e-mail and/or electronic publication.

---

[1] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993) (emphasis added).

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI.     CONCLUSION

The Crista S. Forest Works are an important part of Plaintiff's business. That the accused products use the creative content protected by Plaintiff's copyrights is no coincidence. It is validation that consumers value these rights owned by Plaintiff. Without entry of the requested relief, the sale of infringing products will continue unabated. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED:  May 10, 2023                    Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 W. Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***